49 CCPA

**Application of Leo J. NOVAK and Walter S. Hogue.**

**Patent Appeal No. 6799.**

United States Court of Customs and Patent Appeals.

July 25, 1962.

Toulmin & Toulmin, Harry A. Toulmin, Jr., and Folsom v. E. Drummond, Washington, D. C., for appellants.

Clarence W. Moore, Washington, D. C. (Jack E. Armore, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

MARTIN, Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming the examiner's rejection of claims 1, 2, 6, 23, 25, 32, 33 and 35 of appellants' application for a patent on "Carboxymethyl Dextranates of Organic Bases and Method for Making Them." Certain other claims were "withdrawn from further consideration under Rule 142(b) [35 U.S.C. Appendix], as not being readable on the elected species" and are not before us. No claims have been allowed.

The following claims are illustrative:

"1. A carboxymethyl dextranate of an organic base resulting from neutralization of the base by the acid carboxymethyl dextran, in aqueous solution.

"2. A carboxymethyl dextranate of a physiologically active organic base resulting from neutralization of the base by the acid carboxymethyl dextran, in aqueous solution.

"32. The method of making carboxymethyl dextranates of organic bases which comprises adding an aqueous solution of a carboxymethyl dextran containing some free carboxyl groups to the base at a controlled rate to neutralize the same, and separating the resulting salt from the solution."

Claim 23 differs from claim 2 in reciting the prefatory phrase "A parenteral injection fluid comprising." Claims 6 and 25 are product claims like claims 2 and 23 respectively, but are limited to the use of the particular organic base,

meperidine. Method claim 33 is like claim 32 but is limited to the use of a "physiologically active water-soluble organic base" and to a particular type of carboxymethyl dextran. Claim 35 limits the method of claim 33 to meperidine.

As the claims point out, the application relates to products resulting from the interaction of carboxymethyl dextran and organic bases. Carboxymethyl dextran is a polycarboxylic acid the nature of which is discussed in In re Novak and Tyree, 306 F.2d 917, 49 CCPA ——. According to appellants' specification, any organic base may be used in the practice of their invention by physiologically active bases are preferred. Appellants state:

"Included among the organic bases, which are, generally speaking, nitrogenous substances and include certain of the antibiotics and, also, many alkaloids most of which have nitrogen in a cyclic structure, there are a large group of substances which exhibit physiological activity and have found wide use in medicine because of their stimulating, sedative, narcotic or analgesic action."

Streptomycin is suggested as a suitable antibiotic. Curare, morphine, belladonna, ergot, cocaine, emetine and physostigmine are suggested as suitable alkaloids. Procaine, meperidine and ephedrine are among suitable synthetic drugs. All of these are bases and all will react by a neutralization process with carboxymethyl dextran to form salts within the scope of the product claims.

In further regard to the choice of a base, the specification states:

" * * * It will be apparent, also, that the physiologically active base may be one which is tolerated by and used in the medication of both humans and the lower animals, or it may be one which is used predominantly or exclusively in veterinary practice, such as for example,

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

nicotine. The base may also be one which is used as an insecticide or the like. * * *"

Appellants predicate patentability for their claimed products and the process of making them partially on the advantages the products possess as drugs, medicaments and the like as compared with the corresponding free organic bases or their known "inorganic acid salts." In that regard, the specification states, inter alia:

"The carboxymethyl dextran containing an average of from less than 1.0 to 3.0 carboxymethyl groups per anhydroglucopyranosidic unit of the dextran, associated with the physiologically active organic base in salt combination, exerts an osmotic effect, exhibits a protective colloidal action, and functions as a large-molecule 'diluent' for the base which diluent is digested slowly in the body. By reason of this slow digestion of the carboxymethyl dextran and the osmotic effect which it exerts, it serves to control the rate at which the base is released to the system, thus prolonging the effectiveness of the base for any given dosage thereof administered. Less frequent injections are required to maintain the desired blood level of the base and since the rate of release of the base in the system is retarded, and the full effect thereof is not experienced immediately or abruptly, the amount of those drugs which may be safely administered in a given dosage is somewhat less critical than is normally the case. * * * In addition, the carboxy-

methyl dextran salts of the bases are less "harsh" than hydrochlorides, sulfates, etc. and are, therefore, more acceptable physiologically.

"The carboxymethyl dextran salts have the important advantage that by selection of the dextran and the extent of carboxymethylation thereof up to the permissible limit of an average of about 3.0 carboxymethyl groups per anhydroglucopyranosidic unit of the dextran, it is possible to control the molecular weight and viscosity, osmotic and solubility characteristics of the ether. This, in turn, permits accurate control of the properties of the salt, including the amount of physiologically active organic base chemically combined with the carboxymethyl dextran so that it is possible to control, accurately, pharmacological properties of the salt particularly with regard to dosage form, physiological response, prolongation of the responses at a predetermined level of intensity, rate of absorption of the base, toxicity of the base, stability of the base, etc."

All of the appealed claims were rejected by the examiner on two grounds, unpatentability over certain prior art and "lack of utility." Claims 1, 2, 23, 32 and 33 were also rejected as being "too broad." The board affirmed the examiner on each ground. Since we are able to dispose of this case on the basis of the "utility" rejection,[1] it will be unnecessary to discuss either of the other grounds.

1. The following statement made by this court in In re Lorenz and Wegler, 305 F.2d 875, 49 CCPA ——, is pertinent here: "The examiner and the board made no distinction between the product claims and the process claims as to the ground of rejection. While appellants filed reasons of appeal which would justify our separate consideration of both groups of claims, we construe appellants' brief to be an abandonment of

any issue as to the legality of such a rejection of the process claims. Our decision is thus necessarily limited to a consideration of the rejection solely on the validity of the rejection of the product claims. In re LeBaron, 223 F.2d 471, 42 C.C.P.A. 956; and cases cited therein; and L. & C. Hardtmuth, Inc. v. Fabrique Suisse De Crayons Caran D'Ache S.A., 287 F.2d 599, 48 C.C.P.A. 873."

In his first action on the merits of the appealed application, the examiner stated:

"All the claims are rejected for lack of utility. The composition is set forth as therapeutic. In the absence of clear, convincing, scientific evidence that the composition is safe and effective for the purposes set forth, no claim is allowable. Rudd v. Kingsland [D.C. 94 F.Supp. 569] 88 U.S.P.Q. 418."

In a later action, the examiner stated in part as to the same rejection:

"Claims 1, 2, 6, 23, 25, 32, 33 and 35 are rejected as lacking utility. Since the dextranates are different entities from their component parts, the amine and carboxymethyl dextran, applicants cannot impute the utility of the component parts to the reaction product."

In partial response, appellants thereafter stated:

"Appellants are concerned with *salts of physiologically active organic bases* and acidic carboxymethyl cellulose [dextran?] both of which are known to be safe and useful. The physiological effectiveness of the organic bases disclosed by appellants requires no proof. The carboxymethyl dextran does not effect [sic] the action of the base except in the physical sense, i. e., by retarding and controlling its release. Carboxymethyl dextran has been safely injected intravenously for the purpose of mobilizing radioactive cation from storage places in the bones, as shown by Dr. K. W. Walton, Manufacturing Chemist, August 1953 (pp. 330–333)."

In his answer, the examiner stated in part:

"The claims stand rejected for the lack of utility since applicants have failed to prove each and every allegation of utility. * * *

"Although some degraded dextrans are used in therapy with relatively few adverse effects and many of applicants' bases can be used safely (although page 3 of the specification emphasizes the toxicity of these bases), the applicants cannot rely upon the safety and efficacy of these ingredients, many of which, in reality, are admittedly extremely toxic, to prove the harmlessness and efficacy of their dextranates because the carboxymethyl dextranates are entirely different entities from the carboxymethyl dextran per se and the organic base per se. See Isenstead v. Watson [D.C. 157 F.Supp. 7] 115 USPQ 408."

As to this same ground of rejection, the board stated in part:

"The claims were also rejected for lack of utility, * * *. Appellants' argument on this rejection is that the organic bases actually disclosed require no proof and the carboxymethyl dextran does not affect the action of the base except in the physical sense of retarding and controlling its release. However, as pointed out by the examiner the carboxymethyl dextranates i. e. the combinations of the carboxymethyl dextran with the organic bases are entirely different entities from the individual components and since little prediction is possible in this field clinical evidence would be a minimum requirement to establish utility. Isenstead vs. Watson, Commissioner of Patents (D.C. 157 F.Supp. 7] 115 U.S.P.Q. 408 is in point. * * * The rejection for lack of proof of utility is sustained."

Appellants in their brief appear to base their opposition to this rejection on three points: (1) the safety of carboxymethyl dextran for intravenous injection as shown by the article of Dr. K. W. Walton, cited supra,[2] (2) that "the Pat-

---

2. This article has not been reproduced in the record before us. However, neither the examiner nor the board questioned the safety of carboxymethyl dextran in human therapy and we will assume it is safe.

ent Office Examiner was unable to cite any authority for support of his contention that appellants' new product would not be safe to use as appellants have disclosed in their specification," and (3) the sufficiency of the allegations regarding utility set forth in their specification.

We agree with the board that the examiner's rejection for lack of proof of utility should be sustained. We observe that no evidence whatever has been presented to demonstrate that the claimed compounds have the alleged properties or will function as alleged in the specification. We also observe that prominent among the allegations in the application at bar are statements that the "carboxymethyl dextran groups combined chemically with the organic base * * * influence and regulate the rate of release of the base and hence serve to control the speed or slowness with which the base acts on the system," and that by proper selection of the carboxymethyl dextran "it is possible to establish and maintain, for effective periods of time, a predetermined concentration or dilution of the base at the area treated locally with the salt, or in the blood stream." Other statements of similar import have been quoted, supra. We assume that the utility alleged for the claimed products is based on the validity of these statements. In other words, if the claimed products do not have the properties alleged for them or do not function as alleged, then those products will not be useful for the stated purposes, i. e. as drugs, medicaments, and the like in human therapy.

In our opinion, when an applicant bases utility for a claimed invention on allegations of the sort made by appellants here, unless one with ordinary skill in the art would accept those allegations as obviously valid and correct, it is proper for the examiner to ask for evidence which substantiates them. Here we find no indication that one skilled in this art would accept without question statements that carboxymethyl dextran has the alleged effects on the functioning of *any* base, physiologically active or not, and no evidence has been presented to demonstrate that the claimed products do have those effects.

For these reasons, we affirm the rejection of the board on the ground of lack of proof of utility.

Affirmed.