**Vasil RADOEV, Plaintiff,**

v.

**Edward J. BRENNER, Commissioner of Patents, Defendant.**

**Civ. A. No. 1574-65.**

United States District Court
District of Columbia.

March 15, 1966.

Marvin R. Stern, Jacobi, Davidson & Jacobi, Washington, D. C., for plaintiff.

Joseph Schimmel, Acting Sol., Washington, D. C., for defendant.

JACKSON, District Judge.

This civil action under 35 U.S.C. § 145 came on for hearing March 1, 1966, and, due to his modest financial means, plaintiff was the sole witness who testified in his behalf at the trial. The Court concluded after the presentation of plaintiff's testimony that the decision of the Patent Office Board of Appeals was neither clearly erroneous nor lacking a rational basis. Consequently, formal judgment for defendant dismissing plaintiff's Complaint is now entered, and the Court makes the following Findings of Fact and Conclusions of Law, pursuant to F.R.Civ.P. Rule 52(a), Title 28 U.S. C.A.:

### FINDINGS OF FACT

1. This is a civil action under 35 U.S.C. § 145 in which the plaintiff, Vasil Radoev of Hollywood, California, a Hungarian refugee, as the applicant of application for patent Serial No. 184,652, filed April 3, 1962, entitled "Medicinal Preparation," seeks by his Complaint a judgment from the Court authorizing the defendant, the Commissioner of Patents, to grant plaintiff a patent based upon Claim 10 of that application.

2. The specification of the application in suit describes a medicinal preparation which "permits control of acne to such an extent that a condition is reached wherein the lesions and clinical symptoms have disappeared". The specification further states that "Acne is a skin disease, the treatment of which presents

great difficulties". Two types of preparations are disclosed. One type is formed by mixing one part sheep's milk, two parts cow's whole milk, and one part enriched cream or buttermilk, boiling for ten minutes, cooling to about 35–40°C., inoculating the mixture with Lactobacillus bulgaricus, (Bulgarian milk bacillus), cooling for several hours, and then whipping the mixture to produce the medicinal preparation. The other type of preparation is produced by boiling the sheep's milk for 30 minutes, cooling, admixing with the cow's milk and buttermilk, boiling the resulting mixture for 15 to 20 minutes, cooling to about 35–40°C., inoculating the mixture with Lactobacillus bulgaricus, allowing the mixture to cool slowly for 6 to 7 hours, and removing the thick yellowish surface skin which constitutes the medicinal preparation. Acccording to the application, prior to applying the preparation, "the skin must be thoroughly washed and dried with a soft towel."

3. Claim 10, in issue, reads as follows:

10. A process for contacting acne lesions with a fermented milk product prepared by boiling one part by weight sheep's milk for approximately 30 minutes, cooling the sheep's milk, admixing the sheep's milk to two parts by weight cow's milk and one part by weight buttermilk, then boiling the mixture for 15 to 20 minutes, thereafter cooling the mixture to between 35–40°C., inoculating the cooled mixture with Lactobacillus bulgaricus, then fermenting the mixture for 6 to 7 hours and thereafter separating the thereby produced uppermost layer from the mixture as the fermented milk product, which comprises applying said fermented milk product to acne lesions present upon the epidermal surface.

4. The tribunals of the Patent Office rejected Claim 10 for lack of clear and convincing proof of the alleged therapeutic utility in curing or significantly improving acne conditions.

5. It is well known in the art that acne is a skin disease which is notoriously refractory to all medication and not readily cured.

6. One with ordinary skill in the art would question whether the preparation set forth in Claim 10 is capable of curing or significantly improving acne conditions.

7. With regard to the photographs of four test subjects presented to the Patent Office during prosecution of this application, in view of the known "normal exacerbation of acne in relation to menses" the Examiner's objection that "the four test subjects are all females" is well-taken. Likewise, the Examiner's objection as to variations in distance and lighting conditions between the pictures of test subjects taken before and after treatment is also well-founded. Close-up photographs taken before treatment would tend to magnify the acne conditions in comparison with the pictures taken from a greater distance after treatment.

8. While the affidavits of medical personnel from the Department of Surgery of the University of California Medical Center are quite proper evidence and entitled to consideration as such, it should be recognized that similar affidavits from Department of Dermatology personnel would be entitled to still greater probative weight, since acne is a common skin disease that usually does not require surgical treatment.

9. The plaintiff presented no new probative evidence at the trial, at which he was the only witness, to prove the method defined in Claim 10 is therapeutically useful as alleged or that it significantly improves an acne condition.

10. The plaintiff has not convincingly proved that the process of Claim 10 is therapeutically "useful" within the meaning of that term in 35 U.S.C. § 101.

## CONCLUSIONS OF LAW

1. The presumption of administrative correctness accorded Patent Office decisions will normally prevail in

the absence of new evidence presented at the trial carrying thorough conviction that the Patent Office tribunals erred in deciding a question of fact. Upton et al. v. Ladd, 227 F.Supp. 261 (D.C.D.C. 1964).

 2. Where an application discloses a particular therapeutic utility on humans for the claimed process, it is proper for the Patent Office Examiner to require clear and convincing proof, but not proof beyond a reasonable doubt, of that utility, unless one with ordinary skill in the art would accept the utility statement as obviously valid and correct. See In re Novak et al., 306 F.2d 924, 49 CCPA 1283 (1962).

3. Where convincing proof of the asserted therapeutic utility on humans of a claimed process is not produced either in the Patent Office or at trial, no patent may issue in view of 35 U.S.C. § 101, whenever one with ordinary skill in the art would not accept the asserted statement of utility as obviously valid. Commonwealth Engineering Co. of Ohio v. Ladd, 199 F.Supp. 51 (D.C.D.C.1961); Isenstead v. Watson, 157 F.Supp. 7 (D.C. D.C.1957).

4. Ex parte affidavits are admissible in evidence in a civil action under 35 U.S.C. § 145, as part of the certified copy of the complete Patent Office prosecution record; but live testimony as to their contents by any witness other than the affiants themselves is generally incompetent and inadmissible in evidence under the hearsay rule, since such testimony deprives the Court of an opportunity to observe the demeanor of the absentee affiants during the trial, and further deprives counsel for defendant of the right to cross-examine the absentee affiants. 20 Am.Jur., Evidence, § 452 (1962).

5. While reasonable doubts as to therapeutic utility under 35 U.S.C. § 101 should be resolved in favor of the applicant by the Patent Office tribunals, reasonable doubts as to utility under 35 U.S.C. § 101 on the part of the District Court in a civil action under 35 U.S.C.

§ 145 must now be resolved in favor of the correctness of administrative action by the Patent Office; merely frivolous doubts as to patentability, of course, should always be resolved in favor of the applicant for patent, regardless of the tribunal. See Reynolds v. Aghnides, 356 F.2d 367, (D.C. Cir. 1966).

6. Claim 10 is unpatentable under 35 U.S.C. § 101.

7. Plaintiff is not entitled to a patent containing Claim 10 of application Serial No. 184,652.

8. Due to the special circumstances of this case, the Complaint should be dismissed without prejudice. Isenstead v. Watson, supra, 157 F.Supp. 7.