54 CCPA

**Application of Jacques Georges POTTIER.**

**Patent Appeal No. 7790.**

United States Court of Customs and Patent Appeals.

April 27, 1967.

Fulton B. Flick, Pittsburgh, Pa., for appellant.

Joseph Schimmel, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.[*]

RICH, Judge.

This appeal is from a decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 3, 9, 10, 12, and 13 in application serial No. 145,731, filed October 17, 1961, for "Process for Modifying the Biochemical Characteristics of Plants by Cold Shock." No claim has been allowed.

The invention is a process in which hydrated plantlets are subjected to extreme cold for a few seconds. Claim 9 is illustrative:

9. A method of dwarfing sugar beets by cold shock, characterized by thoroughly hydrating a germinating sugar beet plant and then subjecting it to a temperature below –150° C for between 5 and 10 seconds, whereby to reduce the size of the mature plant.

The appellant asserts that the process affects both the size of the plants which grow from the treated plantlets and their resistance to cold.

The examiner criticized the disclosure as inadequate, some of the claims as indefinite, and all of the claims as defining processes inoperative for the purpose intended and without utility.

The only rejection with which we find it necessary to deal is the one last mentioned. The issue is whether the processes of appellant's claims fail to meet the utility requirement of 35 U.S.C. § 101 because they are inoperative, i. e., they fail to produce the result intended.

The examiner thought that the process would kill the plantlets. He demanded affidavits from "qualified plant physiologists" attesting to the contrary. None was tendered.

The board affirmed, noting with approval the examiner's citation of Isenstead v. Watson, 157 F.Supp. 7 (D.C.D.C. 1957); In re Citron, 325 F.2d 248, 51 CCPA 852 (1963); and In re Citron, 325 F.2d 254, 51 CCPA 859 (1963) and citing, additionally, In re Novak, 306 F.2d 924, 49 CCPA 1283 (1962) in which we said:

* * * when an applicant bases utility for a claimed invention on allegations of the sort made by appellants here, unless one with ordinary skill in the art would accept those allegations as obviously valid and correct, it is proper for the examiner to

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

ask for evidence which substantiates them.

The board held that it was certainly proper to call for evidence in this case in which appellant admitted that his "discovery runs counter to what would be believed would happen by the ordinary person, who would think that the plants would immediately be frozen beyond revival."

 Appellant dismisses the latter as a mere statement of compliance with 35 U.S.C. § 103.[1] He argues that the cited cases do not control inasmuch as each was concerned with human therapy. The treatment "of mere plantlets," in appellant's opinion, is not analogous.

We do not agree. When the operativeness of any process would be deemed unlikely by one of ordinary skill in the art, it is not improper for the examiner to call for evidence of operativeness. In re Novak, supra. Special considerations may, indeed, apply in cases which involve human therapy. See In re Citron, 325 F.2d 248, 51 CCPA 852 (1963). However, whatever the nature of the subject matter, it has not hitherto been supposed that reasonable requests for evidence were inappropriate where operativeness was not apparent.

In In re Ruskin, 354 F.2d 395, 53 CCPA 872 (1966), a case which involved a process of treating a fossil fuel to increase its energy release on combustion, we held that the examiner was justified in requiring some proof of operativeness in view of the inability of the specification and cited art to satisfy one of ordinary skill in the relevant art on the point. Judge Smith dissented because he felt that one of ordinary skill *would* consider the claimed invention operative.

There was, of course, no support in either the majority or dissenting opinions for the proposition that proof of operativeness may never be called for save in cases involving human therapy.

Similarly, in In re Wooddy, 331 F.2d 636, 51 CCPA 1317 (1965), we unanimously affirmed the examiner's rejection of claims to a method for excavating a subterranean salt formation with nuclear explosives. The rejection was based, in part, on the alleged inoperativeness of the claimed procedure. There evidence *was* supplied by the applicant. However, the examiner, board, and this court found it inadequate. We certainly did not deem evidence unnecessary despite the obvious differences between the blasting and the healing arts.

The decision of the board is affirmed.

Affirmed.

---

1. Appellant argues: "The statement in question is a common one and was made simply to show that what the applicant had accomplished was not obvious but was an unexpected result. To have contended otherwise would have been to admit that no [patentable?] invention had been made." We cannot agree. The operativeness of many unobvious inventions is manifest as soon as the invention is described. Furthermore, whether or not an invention would be deemed operative by one of ordinary skill in the art is determined, not at the time the invention was made but rather (at the earliest) at the time of the examiner's call for proof. In In re Wooddy, 331 F.2d 636, 51 CCPA 1317 (1964), the board considered evidence made available after the examiner's Answer and presumably reflecting the state of the art at the time of appeal.