57 CCPA

**Application of Marcella FERENS.**

**Patent Appeal No. 8177.**

United States Court of Customs
and Patent Appeals.

Nov. 20, 1969.

Eugene F. Buell, Buell, Blenko & Ziesenheim, Pittsburgh, Pa., attorneys of record, for appellant.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents; Leroy Randall, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, GANEY, Judge, sitting by designation, ALMOND, BALDWIN and LANE, Judges.

BALDWIN, Judge.

This appeal is from a decision of the Patent Office Board of Appeals which affirmed the examiner's rejections of process claims 1–7 and composition claims 8–10 [1] "as failing to comply with the utility requirement of 35 U.S.C. 101" and on grounds of res judicata.

The invention relates to a method and composition said to be capable of producing "new growth of hair on denuded portions of the human body, particularly the scalp." The details of the method and composition employed are best illustrated in Example 1 of the specification:

\* \* \* I treated a substantially denuded male scalp once each week in the following manner. The scalp was treated with a rake like electrode carrying high frequency current (10,000 oscillations per second) for two minutes at about 40 volts and 2 milliamperes. Immediately following this treatment I applied a composition made up of 30 c. c. of tincture of jaborandi, 5 drops of capsicum extract and 5 c. c. of mullein extract, all buffered to a pH of 4.5. I then gently massaged the scalp while applying a low voltage (40 volts) galvanic current of 1.5 milliamperes for about 3 minutes. I then applied a faradic current (10,000 oscillations per second) of 40 volts and 2

[1]. Appearing in Serial No. 272,214, filed April 11, 1963 as a continuation-in-part of Serial No. 681,444, filed September 3, 1957 and entitled "Methods of Growing Hair."

milliamperes to the scalp while gently massaging for 5 minutes. I again applied the jaborandi mixture set out above and warmed the scalp with steam until slightly pink and then repeated the massage with faradic current for 5 minutes. I removed excess jaborandi mixture and applied a lanolin ointment to the scalp. After two months of such weekly treatments there was a noticeable growth of fine short hair on the previously denuded, smooth scalp. At the end of five months the scalp was substantially covered by a natural growth of hair.

Claims 1 and 8 are representative:

1. A method of growing hair on the human body comprising the steps of applying a mixture of tincture of jaborandi, capsicum extract and mullein extract to a portion of the body to be treated, applying thereafter a galvanic current to the portion to be treated, massaging the portion to be treated while the galvanic current is applied, applying a faradic current to the portion to be treated immediately following the galvanic treatment and massaging the portion to be treated while said faradic current is applied.

8. A composition for promoting the growth of hair on the human body comprising a mixture of tincture of jaborandi, capsicum extract and mullein extract.

Faced with the recitations of usefulness appearing in the specification as above set forth, as well as the knowledge that numerous methods and compositions alleged to have the same usefulness have proven in the past to be uniformly ineffective and unreliable,[2] the examiner re-

---

2. As evidence of that, the examiner cited the Journal of the American Medical Association, Vol. 139, No. 13, pages 840–844 (March 26, 1949) which contains a rather candid discussion by the AMA's Committee on Cosmetics of the often "extravagant and deceptive" claims made by the purveyors of hair growth preparations. The Committee stated in pertinent part:

*Testimonials.*—The advertising of hair "tonics" and hair and scalp treatments abounds in testimonials accompanied by "before" and "after" pictures. These statements testifying to miraculous results obtained from the use of a certain hair preparation must be viewed critically. The processes of the human body are so complex that the average person is unable to distinguish between results which are due to natural causes and those due to artificial remedies.

Testimonials can be obtained in several ways. They can be bought outright; they can be faked; often they are genuine from the documentary standpoint and have been written in good faith. These letters are usually volunteered by well meaning persons who have absolutely no knowledge of the nature of the challenging problems of the loss of hair. * * *

Widely used are "before" and "after" pictures showing a person with varying degrees of baldness originally, and the same person with more hair following the use of certain brands of hair "tonics." In some instances, hair grows on a previously hairless head, but not as a result of any external application or treatment. For example, about three months after prolonged febrile illnesses, severe nervous shocks or traumatic injuries, scalp hair may fall out completely or a rapid general thinning of the hair may take place. At other times, the hair falls out in patches known as "alopecia areata," or the entire head and orbital areas are left without hair. These instances can be differentiated from ordinary baldness by the lack of characteristic patterning which occurs in the latter, first in the area above each eye and at the vertex of the head; both areas eventually merge, but hair will remain at the periphery so that, regardless of the extent of baldness, regular hair cuts are still necessary.

In symptomatic loss of hair, to resort to hair "tonics" and "professional" hair and scalp treatments is unnecessary. Regrowth usually takes place due to the forces of nature and not to any external application. The human mind is so constituted that one is much more prone to give credit to artificial measures than to nature and will, through misdirected gratitude, allow testimonials to be published.

*     *     *     *     *

If the general health of the man is satisfactory and the loss of hair is progressive and in characteristic patterns, the condition is probably, in

jected appellant's claims for lack of "convincing proof" that her method and composition "will grow hair." The board agreed with the examiner, finding that appellant had not presented "convincing evidence of operativeness of the claimed contribution for its intended purpose."

Here, as below, appellant relies heavily on an affidavit of one Dr. Stevens, a neuropsychiatrist, as well as the affidavits of 21 other persons, who claim to have been treated "by the method described" in appellant's application, as "'factual evidence showing that there has been a successful use of the invention for the purpose intended." Dr. Stevens averred that he had "for a period of two years observed continuously seven people who have been treated according to Example I"; that "each of the persons observed by me without exception showed a growth of hair in the areas being treated which areas had previously been devoid of hair"; and that, in his opinion, "all seven persons grew hair on previously denuded scalp areas solely as a result of the Ferens application and not because of any extraneous changing condition of environment, drug therapy or the like." The 21 parties treated by appellant uniformly were of the view that her treatments "were solely responsible for the growth of hair" on their respective scalps.

■ It is unfortunate, perhaps, that appellant finds herself engaged in a field of endeavor where "little of a successful nature has been developed" despite constant effort over the years. See In re Oberweger, *supra.* Of course, we recognize that the fact that some result has not previously been achieved is no reason for rejecting an application purporting to disclose how to achieve that result, since the very purpose of the patent system is to encourage attainment of previously unachievable results. In re Chilowsky, 229 F.2d 457, 43 CCPA 775 (1956). However, where an applicant predicates utility for the claimed invention on allegations of the sort here which are or border on the incredible in light of contemporary knowledge of the particular art, those allegations must be substantiated by acceptable evidence. In re Citron, 325 F.2d 248, 51 CCPA 852 (1963); In re Novak, 306 F.2d 924, 49 CCPA 1283 (1962); Radoev v. Brenner, 253 F.Supp. 923 (D.D.C.1966).

The amount of evidence which is acceptable and the character of such evidence required will obviously vary depending on the facts of each case, but the degree of certainty regarding the truth of the ultimate fact to be proved remains constant. See In re Gazave, 379 F.2d 973, 54 CCPA 1524 (1967); In re Chilowsky, *supra.* Evidence submitted to establish usefulness must be such as would be clear and convincing to one of ordinary skill in the particular art. In re Irons, 340 F.2d 974, 52 CCPA 938 (1965).

young men premature idiopathic baldness or, in older men, senile baldness, referred to previously as ordinary baldness. Medical science does not know any device, substance or method which will regenerate hair lost in these conditions. Neither widely advertised salves, ointments, "tonics," ultraviolet rays, massage nor mechanical devices are effective.

\* \* \* \* \*

The claims of any one that he has developed a remedy for the control or cure of baldness, or that he has inherited a formula for a remedy, or that he has accidentally discovered a remedy or method, should be viewed with the greatest skepticism.

Indeed, appellant's specification acknowledges:

\* \* \* The loss of hair is a particularly disturbing phenomenon which accompanies aging in many people or which is the result of some physical disturbance in the body. Many efforts have been made towards the restoration of hair to such denuded spots without any significant success. Many methods of massage and chemical treatments have been heretofore proposed but the results have not been satisfactory.

See also In re Oberweger, 115 F.2d 826, 28 CCPA 749 (1940).

*Cf.*, In re Novak, *supra*; Radoev v. Brenner, *supra*.

Applying those principles to the case before us, we are unable to hold that appellant has convincingly established the ultimate fact upon which the assertion of usefulness is based, *i. e.*, that the claimed method and composition will, in fact, grow hair. As pointed out by the examiner and board, there is no evidence that the twenty-one persons treated actually read and understood the specification or knew of the method and material applied to their scalps. Additionally, it was not established that healthy hair follicles were not present at the time treatment was started or that the appearance of any hair was not due to other causes. The value of the "before" and "after" photographs is also highly questionable since different lighting conditions and distances were apparent and not explained. In any event, such photographs merely tend to prove the fact that hair may have been grown, not that appellant's treatments caused such growth.

Finally, the affidavit of Dr. Stevens is also not persuasive. In the first place, it is not evident that a neuropsychiatrist is an expert in the field of hair growth. Secondly, the affidavit does not set forth the nature or frequency of his observations or what tests if any were performed on the hair or scalp to determine whether any hair growth was due to other than natural causes.

We will not attempt to recite what evidence would be sufficient. Suffice it to say that, in this case, we are not persuaded that whatever growth of hair the various subjects did experience would necessarily be regarded by those skilled in this particular art as stemming from treatment with appellant's composition and method.

The view we take renders it unnecessary to consider the propriety of the rejection of all claims on res judicata. The decision is affirmed.

Affirmed.