56 CCPA

**Application of Klaus HAFNER.**

**Patent Appeal No. 8126.**

United States Court of Customs and Patent Appeals.

June 5, 1969.

4. Cf. In re Lemin, 364 F.2d 864, 53 CCPA 1382 (1966).

**1404**

Robert A. Sturges, Cleveland, Ohio, Atty. of record, for appellant.

Joseph Schimmel, Washington, D. C., for Commissioner of Patents; Raymond E. Martin, Washington, D. C., of counsel.

Before WORLEY, Chief Judge, and RICH, ALMOND and BALDWIN, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 1, 3, and 4 of application serial No. 384,782, filed July 23, 1964, entitled "New Aldehydes of the Fulvene Series and New Processes of Preparing the Same." No claim has been allowed.

This case comes to us with the following somewhat involved but important background. On August 17, 1959, appellant filed two German applications, one relating to certain fulvene derivatives and the other to certain cyclopentadiene derivatives. By appellant's admission, neither German application contained any disclosure of utility, such disclosure having been unnecessary in Germany. On August 1, 1960, within one year of the German filings, appellant

1. Serial No. 46,390, filed August 1, 1960.

2. Auslegeschrift 1,105,411.

filed a U. S. application [1] (the "parent" of the instant application) combining the two German disclosures. A claim of priority was made and the necessary certified copies of the German applications were filed. Although the parent application alleged that the claimed compounds are useful as intermediates for preparing certain artificial resins and indicated a manner in which such resins can be prepared, all claims were finally rejected under 35 U.S.C. § 112 because of an alleged failure of the specification to disclose how those resins might be put to use.

On April 27, 1961, during the pendency of the parent application, one of appellant's two German applications (hereinafter referred to as "Hafner") was published.[2] More than one year thereafter, on July 24, 1964, the instant continuation-in-part application was filed. It contains a reference to the parent application, and a claim for priority going back to the German application was made at the time of filing. The instant application contains an amplified disclosure of utility and "how to use," the adequacy of which, under 35 U.S.C. § 101 and § 112 respectively, has not been questioned.

All the appealed claims stand rejected as being "fully met (35 USC 102)" by both Hafner and an article published in May 1960 by one Arnold.[3] Assuming that these two references are valid § 102 references and considering their respective dates and the filing dates of appellant's two German and two U. S. applications, the instant application must be entitled to the parent application's U. S. filing date to overcome Hafner and the convention filing date of the German applications to overcome Arnold.

 Until his brief before this court, appellant conceded that

\* \* \* the claims are met by \* \* \* Hafner and \* \* \* Arnold \* \* \*

3. Z. Arnold, "Formylation of Cyclopentadiene," Collection of Czechoslovak Chemical Communications, 25, pp. 1313–1317 (May 1960).

*if the present application is not entitled to rely upon the filing date of the parent application * * * and through it to * * * [Hafner].*

Now, however, appellant urges that these references do not qualify as "enabling" disclosures [4] because they allegedly do not "teach the public 'how to use' the invention * * *." Appellant also maintains that

> * * * the Patent Office is at once inconsistent and unfair in holding that the Arnold disclosure and the Hafner disclosure * * * "fully meet" the appealed claims, and that the disclosure in the parent application which is even better than that in the Hafner reference fails to support the claims on appeal.

In essence, appellant is contending that a double standard should not be applied in determining the adequacy of a disclosure to anticipate under § 102, on the one hand, and to support the patentability of a claim under § 112 on the other. He feels that a disclosure adequate for the one purpose is necessarily adequate for the other but, unhappily for him, this is not so. As we shall develop, a disclosure lacking a teaching of how to use a fully disclosed compound [5] for a specific, substantial utility or of how to use for such purpose a compound produced by a fully disclosed process is, under the present state of the law, entirely adequate to anticipate a claim to either the product or the process and, at the same time, entirely inadequate to support the allowance of such a claim.[6] This is so because of the requirements of law engrafted on sections 101 and 112 by the decision of the Supreme

Court in Brenner v. Manson, 383 U.S. 519, 86 S.Ct. 1033, 16 L.Ed.2d 69 (1966), with respect to the meaning to be given to the words "useful" and "use" in those sections. In construing them, we must of course, give them the meaning demanded by the Supreme Court.[7]

Standing alone, appellant's argument against a double standard is a plausible proposition. However, when considered in light of the specific provisions of § 102, and § 112 as it has been interpreted, it is seen to be untenable—§ 112 provides that the specification must enable one skilled in the art to "use" the invention whereas § 102 makes no such requirement as to an anticipatory disclosure. The disclosure of how to use must relate to a use of the kind considered by the Supreme Court in Brenner v. Manson to be a sufficient utility. The majority of this court has spoken in *Kirk* and *Joly*, supra note 7, as to its construction of the *Manson* requirement. Thus, the double standard which appellant criticizes is now, implicitly if not explicitly, required by law, at least in situations such as we have here, although the "invention" per se claimed is fully disclosed and though the manner of "making," as distinguished from "using," the invention is also fully disclosed or is obvious.

Returning now to the question of appellant's right to his claims of priority, the examiner held appellant not entitled to the filing date of either his German applications or his parent U. S. application because the latter allegedly did not comply with § 112 (as required by § 120) in that the "how to use" requirement of § 112 was not met.

---

4. Citing Seymour v. Osborne, 11 Wall. 516, 78 U.S. 516, 20 L.Ed. 33 (1870) and In re LeGrice, 301 F.2d 929, 49 CCPA 1124 (1962).

5. By "fully disclosed compound" is meant a compound for which a process of making is also disclosed or is obvious.

6. This of course assumes that it would not be obvious how to use the compound for a legally adequate utility.

7. The writer of the present opinion on behalf of the court writes, of course, on the basis of the law as it *is*, notwithstanding his personal views that it should be otherwise for reasons fully expressed in In re Nelson, 280 F.2d 172, 47 CCPA 1031 (1960), and in his dissenting opinion in In re Kirk, 376 F.2d 936, 54 CCPA 1119 (1967), augmented by the late Judge Smith's dissenting opinion in the companion case of In re Joly, 376 F.2d 906, 54 CCPA 1159 (1967).

■ The only "how to use" disclosure in the parent application reads:

The new products are valuable intermediate products especially for preparing artificial resins and plastic masses such as unsaturated linear or cross-linked long-chained acetal resins or mixed acetal-polyester resins which may be copolymerized with monomeric vinyl compounds such as styrene or diallylphthalate.

The examiner and board were of the view that, although persons skilled in the art might well have no difficulty *preparing* acetal resins from the compounds of appellant's invention, the parent application disclosure was still inadequate under § 112 because there is no *express* disclosure of a specific use to which the resulting resins can be put, and appellant has not *shown* that such a use would be obvious.

After carefully reviewing the record and appellant's arguments and in view of the law as established by Brenner v. Manson, *Kirk*, and *Joly*, the decision below appears to be correct.[8]

■ While arguing that his parent application did in fact comply with the first paragraph of § 112, appellant also maintains that § 120 [9] only requires that a "previously filed" U. S. application disclose the *"invention"* as required by § 112 and does not require that it also disclose "the manner and process of making and *using* it" (emphasis added).

Appellant correctly points out that the utility of an invention is distinct from "the invention" per se [10] and from this argues that only "the invention" need be disclosed. If § 120 spoke *only* of an "invention disclosed in an application previously filed in the United States," which it does not, appellant's interpretation might well be unassailable.[11] This section, however, also makes specific reference to the first paragraph of § 112 (see footnote 9). From this we think it clear that § 120 means that, to be entitled to the benefits provided by that section, the invention disclosed in the "previously filed" application must be described therein in such a manner as to satisfy *all* the requirements of the first paragraph of § 112 as the courts have construed it, including that which requires the description to be sufficient to enable one skilled in the art *to use* the same for a legally adequate utility.[12] We therefore find appellant not entitled to the benefit of the parent filing date.

■■ Finally, appellant argues that the instant application is entitled to the filing date of the German applications even though we find it is not entitled to the date of the parent U. S. application. We have carefully considered appellant's extensive arguments but hold that the express language of §§ 119 and 120 requires the contrary conclusion for the reasons stated above. Appellant has argued that his failure to disclose adequately the utility of his invention is a

---

8. See note 7, supra. But for these decisions and their stringent requirements as to the *kind* of "utility" which must be disclosed in compliance with the "how to use" requirement of the first paragraph of § 112, the writer personally would agree with appellant herein that the disclosure of how to use in his parent application, quoted above, complies with the statutory requirements, which would entitle the present continuation-in-part application to the parent's filing date. But the writer's personal views are not the law.

9. § 120. *Benefit of earlier filing date in the United States*
An application for patent for an *invention disclosed in the manner provided*

*by the first paragraph of section 112 of this title* in an application previously filed in the United States by the same inventor shall have the same effect, as to such invention, as though filed on the date of the prior application * * *. [Emphasis added.]

10. In re Kirchner, 305 F.2d 897, 49 CCPA 1234 (1962).

11. Compare the wording of 35 U.S.C. § 119.

12. See Dyer v. Field, 386 F.2d 466, 55 CCPA 771 (1967), footnote 3; In re Risse, 378 F.2d 948, 54 CCPA 1495 (1967); In re Hitchings, 342 F.2d 80, 52 CCPA 1141 (1965); Swain v. Crittendon, 332 F.2d 820, 51 CCPA 1459 (1964).

mere "technical" defect which he could have cured by an amendment of his parent U. S. application (35 U.S.C. § 132), instead of by the continuation-in-part application which he chose. We have to disagree. As we said in the section headed "New Matter" of In re Nelson, supra note 7,

> Of course, if the application had been fatally defective * * * such a defect could not have been cured by an amendment the object of which was to put into the specification something required to be there when it was filed.

Here the parent application is found to be fatally defective. Appellant further argues that his parent application was sufficient, under Rules 53 and 55 to be given a filing date for examination and that its defect was only a "minor informality" such as contemplated by Rule 53(a). An application can be given a filing date and be examined and still contain a fatal defect requiring its rejection. We have already expressed our disagreement with the "minor informality" theory in discussing the "technical" defect argument. What was added in the continuation-in-part to render it adequate under the law was clearly "new matter" under 35 U.S.C. § 132.

Because of the primary ground of our decision—inability to obtain the benefit of the filing date of the U. S. parent application—it follows that appellant does not get the benefit of the filing date of the German applications on which it was based.

The decision of the board is affirmed.

Affirmed.

WORLEY, C. J., and ALMOND, J., concur in the result.