**In re Karl ZIEGLER and Heinz Martin.**

No. 91–1430.

United States Court of Appeals, Federal Circuit.

April 21, 1993.

Rehearing Denied; Suggestion for Rehearing In Banc Declined June 29, 1993.

Arnold Sprung, Sprung, Horn, Kramer & Woods, Tarrytown, NY, argued for appellants. With him on the brief were Nathaniel D. Kramer and Alan J. Grant.

Fred E. McKelvey, Sol., Arlington, VA, argued for appellee. With him on the brief was Adriene B. Lepiane.

Paul E. Crawford and George Pazuniak, Connolly, Bove, Lodge & Hutz, Wilmington, DE, were on the brief, for amicus curiae, Aristech Chemical Corp.

Kenneth E. Madsen, Kenyon & Kenyon, New York City, was on the brief, for amicus curiae, Himont, Inc. Also on the brief was James Galbraith, of counsel.

Before NIES, Chief Judge, ARCHER, Circuit Judge, and COHN, District Judge.[1]

ARCHER, Circuit Judge.

Karl Ziegler and Heinz Martin (together Ziegler) appeal from the June 10, 1991 decision of the Patent and Trademark Office (PTO) Board of Patent Appeals and Interferences (board), sustaining the rejection of claims 37 and 38, the only claims remaining in United States patent application Serial No. 07/108,524, filed October 15, 1987 as a continuation of United States patent application Serial No. 03/514,068. We affirm.

## I.

This case concerns polypropylene, a polymer of propylene molecules.[2] On August 3, 1954, Ziegler filed in Germany a patent application, Z 4348 IVc/39c (the German application), entitled "Process for polymerization and copolymerization of olefines." The application described four polymer products produced by the claimed process: polypropylene, poly-n-butylene, and two ethylene-propylene interpolymers.

On June 8, 1955, Ziegler then filed in the United States patent application Serial No. 03/514,068, the parent of the application here at issue. Ziegler claimed an August 3, 1954 priority date under 35 U.S.C. § 119 based on the German application. Because of the pendency of an interference, the PTO suspended prosecution of the parent application for a number of years. The PTO issued an office action on May 22, 1985, in which it rejected the claims then pending. The final rejection of the sole remaining claim 66 was considered and sustained by the board, and by this

---

1. The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

2. For a basic discussion of the relevant polymer chemistry, see *Phillips Petroleum Co. v. United States Steel Corp.*, 673 F.Supp. 1278, 1284–86, 6 USPQ2d 1065, 1067–68 (D.Del.1987), *aff'd*, 865 F.2d 1247, 9 USPQ2d 1461 (Fed.Cir.1989).

court in *In re Ziegler*, 833 F.2d 1024 (Fed. Cir.1987) (unpublished).[3]

On October 15, 1987, Ziegler filed the application here at issue, Serial No. 07/108,524, as a continuation of the parent application. Former claim 66 was amended and presented in this application as claim 37; Ziegler later added a claim 38. Claims 37 and 38 are the sole remaining claims in the application and read as follows:

37. Solid, plastic polypropylene characterized by being able to be pressed into flexible foils and sheets at temperatures above about 140°C and formed by the polymerization of propylene, using a catalyst formed from an aluminum alkyl and a titanium halide.

38. Solid, plastic polypropylene characterized by being able to be pressed into flexible foils and sheets at a temperature of about 140°C and formed by the polymerization of propylene, using a catalyst formed from an aluminum alkyl and a titanium halide.

The examiner finally rejected claims 37 and 38 on several grounds, three of which were sustained by the board. The board first sustained the examiner's rejection of claims 37 and 38 under 35 U.S.C. § 102(g),[4] finding that one Baxter had previously invented the claimed polypropylene in experimental Run 4460–41.[5]

The board also sustained the examiner's rejection of claims 37 and 38 under 35 U.S.C. § 102(e) in view of United States Patent No. 4,371,680 to Baxter *et al.* (Baxter '680). Baxter '680 was filed on August 19, 1954, after the August 3, 1954 filing date of Ziegler's German application. However, the examiner concluded that because the disclosure of the German application failed to satisfy the requirements of 35 U.S.C. § 112, Ziegler could not claim the benefit of its filing date under 35 U.S.C. § 119. Therefore Baxter '680 anticipated claims 37 and 38 under section 102(e). The examiner found the German application deficient for two reasons: first, the German application failed to disclose a practical utility for the claimed polypropylene; and second, the German application did not contain a written description of the claimed subject matter in that the claim language regarding being able to be pressed at temperatures "above about 140°C" for claim 37 and "about 140°C" for claim 38 was broader than the German application's disclosure that the polypropylene could be pressed "at 140°C." In his answer on appeal before the board, the examiner entered a new ground of rejection, of claim 37 under 35 U.S.C. § 112, first paragraph, on the ground that the specification of the United States application did not contain an adequate written description to support the claim limitation being able to be pressed at temperatures "above about 140°C."

The board sustained the following rejections: (1) claims 37 and 38 under 35 U.S.C. § 102(g) in view of Baxter's Run 4460–41; (2) claims 37 and 38 under 35 U.S.C. § 102(e) in view of Baxter '680, because the German application failed for two reasons to satisfy 35 U.S.C. § 112; and (3) claim 37 under 35 U.S.C. § 112 for inadequate written description.[6]

---

**3.** Claim 66 read:

White, solid, plastic polypropylene characterized by being able to be worked into foils and sheets at temperatures above about 140°C and formed by the polymerization of propylene, using a catalyst formed from an aluminum alkyl and a titanium halide.

**4.** 35 U.S.C. § 102(g) provides in pertinent part:

A person shall be entitled to a patent unless—

. . . .

(g) before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it.

**5.** Run 4460–41 is discussed in *Standard Oil Co. v. Montedison, S.p.A.*, 494 F.Supp. 370, 390–95, 206 USPQ 676, 698–702 (D.Del.1980), *aff'd*, 664 F.2d

356, 212 USPQ 327 (3d Cir.1981), and in *Anderson v. Natta*, 480 F.2d 1392, 1395–97, 1399, 178 USPQ 458, 460–61, 463 (CCPA 1973). The examiner concluded that the facts of *Standard Oil* demonstrated that Baxter began Run 4460–41 in May 1954, prior to Ziegler's August 3, 1954 German filing date, and that the Run produced polypropylene that reasonably appeared to be identical with the product defined in claims 37 and 38.

**6.** In sustaining the section 102(e)/Baxter '680 rejection, the board expressly agreed with the examiner's determination of inadequate written description. Because the board did not disagree with the examiner's section 102(e)/Baxter '680 rejection based on the German application's lack of utility, that basis for rejection is properly be-

After the board's decision, Ziegler requested reconsideration to allow entry of an amendment canceling claim 37 and amending claim 38 to remove the term "about." The board refused, and this appeal followed.

## II.

■ The board sustained the examiner's rejection of claims 37 and 38 under 35 U.S.C. § 102(e) [7] as anticipated by Baxter '680 because Ziegler was not entitled to claim the benefit of the filing date of the German application under 35 U.S.C. § 119.[8] It is undisputed that if Ziegler cannot claim the benefit of the German filing date to antedate Baxter '680, Baxter '680 anticipates and makes unpatentable under 35 U.S.C. § 102(e) the subject matter claimed in claims 37 and 38. Therefore, the only issue relating to the section 102(e) rejection is whether the examiner and the board correctly concluded that Ziegler was not entitled to the priority date of the German application because that application failed to disclose a practical utility for, and because it failed to contain a written description of, the claimed polypropylene.

■ A foreign patent application must meet the requirements of 35 U.S.C. § 112, first paragraph, in order for a later filed United States application to be entitled to the benefit of the foreign filing date under 35 U.S.C. § 119. *Yasuko Kawai v. Metlesics,* 480 F.2d 880, 885–89, 178 USPQ 158, 162–65 (CCPA 1973); *Anderson v. Natta,* 480 F.2d 1392, 1399, 178 USPQ 458, 462 (CCPA 1973).

The applicant for a United States patent bears the burden of establishing its entitlement to the filing date of a previously filed application. *Wagoner v. Barger,* 463 F.2d 1377, 1380, 175 USPQ 85, 87 (CCPA 1972).

■ The first issue thus is whether the determination that Ziegler did not establish that the German application disclosed a practical utility for the polypropylene was clearly erroneous. We assume that the conclusion that the German application lacked a sufficient showing of utility was based on the "how to use" prong of the enablement requirement of 35 U.S.C. § 112, first paragraph. That paragraph provides in pertinent part:

> The specification shall contain a written description of the invention, and of the manner and process of making and *using* it, in such full, clear, concise, and exact terms as *to enable* any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and *use* the same. . . .

35 U.S.C. § 112 (emphases added). Whether disclosure is enabling is a question of law. *Raytheon Co. v. Roper Corp.,* 724 F.2d 951, 960 n. 6, 220 USPQ 592, 599 n. 6 (Fed.Cir. 1983). The how to use prong of section 112 incorporates as a matter of law the requirement of 35 U.S.C. § 101 that the specification disclose as a matter of fact a practical utility for the invention. *See Cross v. Iizuka,* 753 F.2d 1040, 1042–44, 224 USPQ 739, 741–42 (Fed.Cir.1985) (a foreign application does not

fore us in this appeal. 37 C.F.R. § 1.196(a); *In re Le Baron,* 223 F.2d 471, 474, 106 USPQ 176, 178 (CCPA 1955). We reject Ziegler's argument that the examiner withdrew his no utility rejection because his supplemental answer was silent as to the utility issue. After the examiner's answer, Ziegler amended his claims. In response, the examiner supplemented his answer and continued his section 102(e)/Baxter '680 rejection. Because Ziegler's amendment was directed only to the written description bases for rejection, it would have been redundant, and therefore perhaps even improper, for the examiner to supplement his answer with a discussion of utility. *See* 37 C.F.R. § 1.193(a) (the examiner's answer shall explain grounds of rejection only "as may be necessary").

7. 35 U.S.C. § 102(e) provides in pertinent part:
   A person shall be entitled to a patent unless—

. . . .

(e) the invention was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent. . . .

8. 35 U.S.C. § 119 provides in pertinent part:
   An application for patent for an invention filed in this country by any person who has . . . previously regularly filed an application for a patent for the same invention in a foreign country which affords similar privileges in the case of applications filed in the United States or to citizens of the United States, shall have the same effect as the same application would have if filed in this country on the date on which the application for patent for the same invention was first filed in such foreign country, if the application in this country is filed within twelve months from the earliest date on which such foreign application was filed. . . .

satisfy section 112 if it fails to disclose a practical utility for the invention within section 101); *In re Fouche*, 439 F.2d 1237, 1243, 169 USPQ 429, 434 (CCPA 1971) (if "compositions are in fact useless, [applicant's] specification cannot have taught how to use them."). If the application fails as a matter of fact to satisfy 35 U.S.C. § 101, then the application also fails as a matter of law to enable one of ordinary skill in the art to use the invention under 35 U.S.C. § 112. The benefit of the foreign application's filing date cannot then be obtained under 35 U.S.C. § 119.

█ "It is axiomatic that an invention cannot be considered 'useful', in the sense that a patent can be granted on it, unless substantial or practical utility for the invention has been discovered and disclosed where such utility would not be obvious." *Cross v. Iizuka*, 753 F.2d at 1044, 224 USPQ at 742. In the context of a constructive reduction to practice, "practical utility for the invention is determined by reference to, and a factual analysis of, the disclosures of the application." *Id.* In order to resolve the issue of utility in this case, we must therefore consider two questions: "(1) What utility is disclosed by the [foreign] priority application? [and] (2) Does this stated utility comply with the 'practical utility' requirement of 35 U.S.C. § 101, *as delimited by prior decisions of the judiciary?*" *Id.* (emphasis added).

Ziegler relies solely on the following assertions in the German application in arguing that the application disclosed a specific and a substantial or practical utility for polypropylene:

> [In this application] catalysts have been disclosed with which ethylene can be polymerized ... to yield plastic-like polyethylenes of high value.
>
> It has now been found that with catalysts of identical or analogous type, ethylene homologues may also be converted to plastic-like polymers. This is true particularly for propylene and it is very surprising because the transformation of pure propylene into a genuine polypropylene plastic material has never been previously

described in the literature. The polymerizing effect of the catalyst is, however, not restricted to propylene, whose higher homologues, such as butylene, pentene, hexene, or also isobutylene, may likewise be polymerized....

> ....
>
> The granular solid propylene obtained may be pressed at 140°C to yield flexible foils which appear transparent in thin films and opaque in thick layers.[9]

The new plastic is distinguished by a very characteristic infrared spectrum....

█ As to the assertions in the German application that the disclosed polymers (which include polypropylene) are "plastic-like," in *Anderson v. Natta*, the Court of Customs and Patent Appeals squarely held in an interference involving Ziegler's parent application in which Ziegler was a party that the disclosure in Ziegler's German application that a polymer is "plastic-like" is an insufficient assertion of utility. 480 F.2d 1392, 1399, 178 USPQ 458, 463. Consequently, Ziegler is collaterally estopped to presently argue otherwise. *See In re Szwarc*, 319 F.2d 277, 284, 138 USPQ 208, 214 (CCPA 1963).

As to the remaining disclosure in the German application—that the polypropylene is solid and that it may be pressed into a flexible film with a characteristic infrared spectrum—there are several cases delimiting the boundaries of practical utility for polymer products. In *Petrocarbon Ltd. v. Watson*, 247 F.2d 800, 114 USPQ 94 (D.C.Cir.1957), the Court of Appeals for the District of Columbia Circuit held that the applicant failed to adequately disclose a utility for a product of the claimed polymerization process. The court reasoned:

> The examples indicate that the polymer forms a "film"; but they do not indicate whether or not this film adheres to the object on which it forms, whether it falls off in the form of a powder, whether it is detachable in the form of a film-like substance (similar perhaps to cellophane),

---

9. Ziegler's German application set forth four examples. The first example disclosed the polymerization of propylene to obtain a polypropylene product.

whether the film of polymer is useful as such, whether it would have to be subjected to further processing before it could form a useful object or fluid, and so on.... [T]he word "film" by itself does not connote a particular use....

247 F.2d at 801, 114 USPQ at 95.

■ Similarly, in *Anderson v. Natta,* the Court of Customs and Patent Appeals rejected Anderson's assertion of an actual reduction to practice of an ethylene-olefin copolymer, holding that the product lacked utility:

> [T]he only specific utility asserted by Anderson for any of the products of the runs alleged to constitute reduction to practice is as a film.... [N]o specific utility other than film is identified....
>
> ....
>
> ... Accepting as a fact that ... the film [was self-supporting, tough, and flexible], we nevertheless conclude that in the absence of standard testing for strength, for example, a sample film could not have been assumed to be practically fit for use as a film.... We think there is a discernible difference between a small quantity of polymer product pressed into the shape of a film for infrared scanning, a procedure which must have been standard practice with polymerization reaction products, and *a film which is determined to be practically useful* in applications for which thermoplastic film is suitable.

480 F.2d at 1395–97, 178 USPQ at 460–61 (emphasis added).[10]

Finally, in *Standard Oil Co. v. Montedison, S.p.A.,* 494 F.Supp. 370, 206 USPQ 676 (D.Del.1980), *aff'd,* 664 F.2d 356, 212 USPQ 327 (3d Cir.1981), the district court held that Hogan was entitled to the benefit of an earlier-filed application because, *inter alia,* the application sufficiently disclosed practical utility for crystalline polypropylene. The district court based its holding on the state-

ments in Hogan's application that the polypropylene had "utility in applications where any of the solid plastics are used," and that the product was "thermally stable," a property which the court found essential to utility as a molded plastic, along with the application's disclosure of a decomposition temperature and solidity, density, and viscosity measurements. 494 F.Supp. at 435, 206 USPQ at 734–35. The court relied on the testimony of an expert that from the disclosure of the application,

> [T]here is no question that from this material you could mold a button, a poker chip, a rod, a sheet—there is no question that you could extrude filaments ... and such filaments could be used, for example, as insulation for noise and for heat.

*Id.* at 435, 206 USPQ at 735 (alterations in original). The district court therefore concluded that Hogan had asserted "actual, not merely potential, benefit ... directed to the immediate practical utility of [the disclosed] product." *See Standard Oil,* 664 F.2d 356, 374, 212 USPQ 327, 343 (3d Cir.1981). On appeal, the Third Circuit in affirming the district court distinguished *Petrocarbon* because the applicant there failed to assert a use for the disclosed film and failed to disclose how stated properties of the film might contribute to utility. *Id.*

Ziegler argues that this court should simply adopt the decision by the Board of Patent Interferences, *Anderson v. Baxter v. Natta,* Interference No. 90,833 (Bd.Pat.Int. Sept. 15, 1969), wherein the board specifically held that the German application disclosed a practical utility for polypropylene. We decline to

---

10. Ziegler argues that *Anderson* is inapposite because Ziegler relies on a constructive reduction to practice which merely requires a "statement of utility," while *Anderson* involved an actual reduction to practice which Ziegler argues further requires "testing to establish utility and contemporaneous conviction of success with respect to production of the specified product." We disagree that the distinction makes any difference in this case. Whether an invention is actually or constructively reduced to practice, the principle that the product must be stated to have

practical utility is the same. *See Cross v. Iizuka,* 753 F.2d at 1046 & n. 14, 224 USPQ at 744 & n. 14. In *Anderson,* the court assumed that Baxter had successfully tested the film to demonstrate that it was tough, self-supporting, flexible, and had a characteristic infrared spectrum, but nevertheless concluded that this "utility" was not of a practical quality within section 101. The issue in the instant case is whether Ziegler's lesser assertions of "utility" are of a practical quality. Accordingly, *Anderson* is directly on point.

do so for several reasons. First, that decision was prior to the decision of the Court of Customs and Patent Appeals in *Anderson v. Natta.* Second, there the question of the sufficiency of the disclosure of Ziegler's German application had been raised for the first time before the board, only one party addressed the issue to the board, and the board decided without explaining why that the disclosure was sufficient. That decision is therefore neither binding nor persuasive.

In light of the above cases, we conclude that the determination that Ziegler's German application failed to disclose a practical utility for polypropylene sufficient to satisfy 35 U.S.C. § 101 was not clearly erroneous. In the German application, Ziegler disclosed only that solid granules of polypropylene could be pressed into a flexible film with a characteristic infrared spectrum and that the polypropylene was "plastic-like." Like Anderson in *Anderson v. Natta* and the applicant in *Petrocarbon,* and unlike Hogan in *Standard Oil,* Ziegler did not assert any practical use for the polypropylene or its film, and Ziegler did not disclose any characteristics of the polypropylene or its film that demonstrated its utility. Ziegler did not even assert that the polypropylene was useful in applications where any of the solid plastics were used. Rather, Ziegler said the polypropylene was "plastic-like." And we have already adjudicated that that assertion is insufficient. *Anderson v. Natta,* 480 F.2d at 1399, 178 USPQ at 463.

When Ziegler filed the application in Germany almost forty years ago, it was a time of competition surrounding the polymerization of propylene. *See generally Standard Oil,* 494 F.Supp. 370, 206 USPQ 676 (D.Del.1980), *aff'd,* 664 F.2d 356, 212 USPQ 327 (3d Cir. 1981); *Phillips Petroleum Co. v. United States Steel Corp.,* 673 F.Supp. 1278, 6 USPQ2d 1065 (D.Del.1987), *aff'd,* 865 F.2d 1247, 9 USPQ2d 1461 (Fed.Cir.1989); Sicilia, *A Most Invented Invention,* American Heritage of Invention & Technology, Spring/Summer 1990, at 45. Ziegler's German application states that propylene had never been previously transformed into a "genuine" plastic, yet then describes the polymers therein including polypropylene as "plastic-like." We are convinced that, at best, Ziegler was on the way to discovering a practical utility

for polypropylene at the time of the filing of the German application; but in that application Ziegler had not yet gotten there. It would be unlawful as well as unfair to permit Ziegler to "file a patent application for [a] promising chemical compound[ ] in a foreign country[,] ... have up to one year to determine a practical utility before filing in the United States and yet claim an earlier date of invention" under 35 U.S.C. § 119. *Yasuko Kawai,* 480 F.2d at 886, 178 USPQ at 163. The utility of a chemical compound may not reside in its "potential role as an object of use-testing." *Brenner v. Manson,* 383 U.S. 519, 535, 86 S.Ct. 1033, 1042, 16 L.Ed.2d 69, 148 USPQ 689, 696 (1966). To satisfy 35 U.S.C. § 101, to be able to serve as a predicate for a section 119 claim, the disclosure must assert a "specific benefit ... in currently available form." *See id.* at 534–35, 86 S.Ct. at 1041–42, 148 USPQ at 695. Ziegler's German application failed to do this. While we are cognizant of Ziegler's noteworthy contributions to polymer chemistry, we must nevertheless abide by the principle underlying 35 U.S.C. § 101 that a patent "is not a reward for the search, but compensation for its successful conclusion." *Id.* at 536, 86 S.Ct. at 1042, 148 USPQ at 696.

### III.

Because Ziegler's German application did not disclose a practical utility for polypropylene, Ziegler may not claim the benefit of that application's filing date under 35 U.S.C. § 119. Without that date, Baxter '680 anticipates the subject matter sought to be patented in claims 37 and 38 under 35 U.S.C. § 102(e).[11]

AFFIRMED.

---

11. In light of our affirmance of the section 102(e)/Baxter '680 rejection, we do not reach the question whether the other rejections were also proper.